IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.  **INDICTMENT**

MORGAN KELLEY FOSTER
JAY'LAIN JAVON JONES-TILLERY
 and
MARSHELLO ANTOINETTE LAMB

4:20cr1-AW

_____/

**THE GRAND JURY CHARGES:**

## COUNT ONE

### A. INTRODUCTION

At all times material to this Indictment:

1. The TJX Companies, Inc. ("hereinafter TJX") was an apparel and home fashions retailer in the U.S. and worldwide that was incorporated in Delaware. TJX operated stores including T.J. Maxx, Marshalls, and HomeGoods. The corporate headquarters for TJX was located in Massachusetts. TJX operated a HomeGoods store located at 1400 Village Square Boulevard, Tallahassee, Leon County, Florida, in the Northern District of Florida.

2. To process payments from customers and to process returns to customers, TJX utilized a point-of-sale system (hereinafter "POS system"). The

servers for TJX's POS system were located in the state of New Jersey. The TJX POS system was used to process payments and refunds in the form of cash, credit card, debit card, and gift card.

3. **MORGAN KELLEY FOSTER** was employed by the Tallahassee HomeGoods store since 2018. Foster's duties included operating TJX cash registers and the POS system.

4. Employees of HomeGoods were assigned a unique identification number. Transactions using the TJX POS system logged the identification number of the employee who conducted a particular transaction using the POS system. **MORGAN KELLEY FOSTER** was assigned 1047 as her identification number by the Tallahassee HomeGoods store.

5. **MARSHELLO ANTOINETTE LAMB** worked for Sodexo where she supervised **JAY'LAIN JAVON JONES-TILLERY**. Lamb also owned a Florida Limited Liability Company, to wit, Marshello Café LLC, through which Lamb operated Lamb's Café, a restaurant in Gadsden County, Florida.

6. **JAY'LAIN JAVON JONES-TILLERY** was employed by Sodexo, Inc. in 2018 and 2019 where he was supervised by **MARSHELLO ANTOINETTE LAMB**.

2

7. **JAY'LAIN JAVON JONES-TILLERY** was also employed by **MARSHELLO ANTOINETTE LAMB** during the summer of 2019 at Lamb's Café.

8. **JAY'LAIN JAVON JONES-TILLERY** was arrested by the Tallahassee Police Department at the HomeGoods store on July 23, 2019 for his involvement in the scheme described in Sections B and C of Count One of this Indictment.

9. At the time of his arrest, **JAY'LAIN JAVON JONES-TILLERY** was found in possession of approximately $2,259 in United States currency. This cash was confiscated from Jones-Tillery for forfeiture by the United States Secret Service.

## B. THE CHARGE

Between on or about June 22, 2019, and on or about July 23, 2019, in the Northern District of Florida and elsewhere, the defendants,

**MORGAN KELLEY FOSTER,
and
JAY'LAIN JAVON JONES-TILLERY,**

did knowingly and willfully combine, conspire, confederate, and agree together and with other persons to devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and to cause wire communications to be transmitted

3

in interstate commerce for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343.

## C. MANNER AND MEANS

The manner and means by which this conspiracy was committed included the following:

1. **JAY'LAIN JAVON JONES-TILLERY** arrived at the Tallahassee HomeGoods store during **MORGAN KELLEY FOSTER**'s shift there. Jones-Tillery selected merchandise from around the store which he did not pay for.

2. **JAY'LAIN JAVON JONES-TILLERY** made a concerted effort to end up at **MORGAN KELLEY FOSTER**'s register. This was accomplished by Jones-Tillery stalling so other customers would go ahead of him in the checkout line, or he would verbally give permission for other customers to go ahead of him in the checkout line.

3. When **JAY'LAIN JAVON JONES-TILLERY** arrived at **MORGAN KELLEY FOSTER**'s register, Foster performed a manual override of the POS system to process a return transaction using the POS system.

4. **MORGAN KELLEY FOSTER** provided cash from the fraudulent return transactions to **JAY'LAIN JAVON JONES-TILLERY** and applied credits from the fraudulent return transactions to debit cards that Jones-Tillery

provided or that Foster provided herself. Merchandise was often removed from the store by Jones-Tillery during after the fraudulent return transactions.

5. By all of the above described conduct, **MORGAN KELLEY FOSTER and JAY'LAIN JAVON JONES-TILLERY** fraudulently obtained and attempted to obtain approximately $13,000 in funds and merchandise to which they were not entitled.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FIFTEEN

### A. INTRODUCTION

The allegations of Section A of Count One is hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between on or about June 22, 2019, and on or about July 23, 2019, in the Northern District of Florida and elsewhere, the defendants,

**MORGAN KELLEY FOSTER,
and
JAY'LAIN JAVON JONES-TILLERY,**

did knowingly and willfully devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, did cause a wire communication to be transmitted in interstate commerce.

5

## C. THE FRAUDULENT SCHEME

The allegations of Section C of Count One is hereby realleged and incorporated by reference as if fully set forth herein.

## D. EXECUTION OF THE SCHEME

On or about the following dates, for the purpose of executing and attempting to execute the scheme to defraud, did knowingly cause wire communications to be transmitted in interstate commerce, as set forth below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| Two | June 22, 2019 | $209.54 cash refund transaction sent from Tallahassee to New Jersey |
| Three | June 22, 2019 | $449.32 cash refund transaction sent from Tallahassee to New Jersey |
| Four | July 5, 2019 | $193.46 refund sent from TJX to an account associated with a debit card number ending in 5575 |
| Five | July 5, 2019 | $225.71 cash refund transaction sent from Tallahassee to New Jersey |
| Six | July 7, 2019 | $348.17 refund sent from TJX to an account associated with a debit card number ending in 6576 |
| Seven | July 7, 2019 | $283.67 cash refund transaction sent from Tallahassee to New Jersey |
| Eight | July 10, 2019 | $295.60 refund sent from TJX to an account associated with a debit card number ending in 5575 |
| Nine | July 10, 2019 | $182.70 refund sent from TJX to an account associated with a debit card number ending in 6576 |
| Ten | July 14, 2019 | $279.48 refund sent from TJX to an account associated with a debit card number ending in 5575 |
| Eleven | July 14, 2019 | $210.60 refund sent from TJX to an account associated with a debit card number ending in 6576 |
| Twelve | July 17, 2019 | $279.48 refund sent from TJX to an account associated with a debit card number ending in 5575 |

| Thirteen | July 19, 2019 | $284.80 refund sent from TJX to an account associated with a debit card number ending in 4940 |
| Fourteen | July 19, 2019 | $148.52 cash refund transaction sent from Tallahassee to New Jersey |
| Fifteen | July 23, 2019 | $633.15 refund sent from TJX to an account associated with a debit card number ending in 4940 |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIXTEEN

On or about July 23, 2019, in the Northern District of Florida, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Secret Service, the defendant,

## MORGAN KELLEY FOSTER,

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, to wit, the defendant falsely stated to a Special Agent of the United States Secret Service that an unknown female (who Foster identified as using a social media username with the initials "Q.N.N." and who also used to work for the Tallahassee HomeGoods store) was involved in the scheme along with Jones-Tillery, and that the female would tell Jones-Tillery what to do and what items she wanted from the store and then Jones-Tillery would relay that information to Foster herself, whereas, in truth and in fact and as the defendant well knew, that there was no one involved in the scheme described in Counts One through Fifteen of this Indictment other than Foster and Jones-Tillery.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT SEVENTEEN

### A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between on or about July 25, 2019, and on or about August 12, 2019, in the Northern District of Florida, the defendants,

**JAY'LAIN JAVON JONES-TILLERY,**
**and**
**MARSHELLO ANTOINETTE LAMB,**

did knowingly cover up, falsify, and make a false entry in a record and document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Secret Service, a department and agency of the United States, and in relation to and in contemplation of such a matter. That is, in one or more paystubs, **JAY'LAIN JAVON JONES-TILLERY** and **MARSHELLO ANTOINETTE LAMB** made the following entry, knowing it to be false:

(1) **JONES-TILLERY** worked 40 hours for Lamb's Café between June 22, 2019 and June 28, 2019;

(2)   As of June 28, 2019, **JONES-TILLERY** earned $13,520 in wages working for Lamb's Café to date;

(3)   For the June 22, 2019 through June 28, 2019 pay period, Lamb's Café made withholdings from **JONES-TILLERY**'s wages for federal taxes, Social Security, and Medicare;

(4)   **JONES-TILLERY** worked 40 hours for Lamb's Café between June 29, 2019 and July 5, 2019;

(5)   As of July 5, 2019, **JONES-TILLERY** earned $14,040 in wages working for Lamb's Café to date;

(6)   For the June 29, 2019 and July 5, 2019 pay period, Lamb's Café made withholdings from **JONES-TILLERY**'s wages for federal taxes, Social Security, and Medicare;

(7)   **JONES-TILLERY** worked 40 hours for Lamb's Café between July 6, 2019 and July 12, 2019;

(8)   As of July 12, 2019, **JONES-TILLERY** earned $14,560 in wages working for Lamb's Café to date;

(9)   For the July 6, 2019 and July 12, 2019 pay period, Lamb's Café made withholdings from **JONES-TILLERY**'s wages for federal taxes, Social Security, and Medicare;

(10) **JONES-TILLERY** worked 40 hours for Lamb's Café between July 13, 2019 and July 19, 2019;

(11) As of July 19, 2019, **JONES-TILLERY** earned $15,080 in wages working for Lamb's Café to date;

(12) For the July 13, 2019 and July 19, 2019 pay period, Lamb's Café made withholdings from **JONES-TILLERY**'s wages for federal taxes, Social Security, and Medicare;

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT EIGHTEEN

### A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

On or about August 12, 2019, in the Northern District of Florida, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Secret Service, the defendant,

**MARSHELLO ANTOINETTE LAMB,**

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, to wit, the defendant falsely stated to a Special Agent of the United States Secret Service that the paystubs submitted by Jones-

Tillery to the Tallahassee Police Department were authentic and true, whereas, in truth and in fact and as the defendant well knew, that Lamb had been requested by Jones-Tillery to create false paystubs and Lamb did create false paystubs, to make it appear that the funds confiscated from Jones-Tillery at his arrest were from legitimate employment at Lamb's Café that was unrelated to the scheme described in Count One of this Indictment.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT NINETEEN

### A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

On or about August 12, 2019, in the Northern District of Florida, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Secret Service, the defendant,

**MARSHELLO ANTOINETTE LAMB,**

did knowingly and willfully use a false writing and document knowing the same to contain materially false, fictitious, fraudulent statements and entries, namely, **Lamb** emailed a fraudulent and falsely made paystub bearing the employer name of Lamb's Café to a Special Agent of the United States Secret Service, to make it

11

appear that the funds confiscated from Jones-Tillery at the time of his arrest were from legitimate employment at Lamb's Café that was unrelated to the scheme described in Count One of this Indictment.

In violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT TWENTY

### A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

On or about October 9, 2019, in the Northern District of Florida and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Secret Service, the defendant,

**JAY'LAIN JAVON JONES-TILLERY,**

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, to wit, the defendant falsely stated in a Seized Asset Claim Form that the money confiscated from him at the time of his arrest was from his employment, whereas, in truth and in fact and as the defendant well knew, the defendant had requested Marshello Antoinette Lamb to create false paystubs and that Lamb did create false paystubs, to make it appear that the funds

confiscated from **Jones-Tillery** at the time of his arrest on July 23, 2019, were from legitimate employment at Lamb's Café that was unrelated to the scheme described in Count One of this Indictment.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT TWENTY-ONE

### A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

On or about October 9, 2019, in the Northern District of Florida and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Secret Service, the defendant,

**JAY'LAIN JAVON JONES-TILLERY,**

did knowingly and willfully use a false writing and document knowing the same to contain materially false, fictitious, fraudulent statements and entries, namely, the defendant used a fraudulent and falsely made paystub bearing the employer name of Lamb's Café, to make it appear that the funds confiscated from **Jones-Tillery** at the time of his arrest on July 23, 2019, were from legitimate employment at

Lamb's Café that was unrelated to the scheme described in Count One of this Indictment.

In violation of Title 18, United States Code, Section 1001(a)(3).

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Fifteen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From their engagement in the violations alleged in Counts One through Fifteen of this Indictment, the defendants,

**MORGAN KELLEY FOSTER,
and
JAY'LAIN JAVON JONES-TILLERY,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(a)(2), and Title 28, United States Code, Section 2461(c), any and all of the defendant's right, title, and interest in any property, real and personal, constituting, and derived from, proceeds traceable to such offenses, including, but not limited to, the aggregate sum of approximately $13,000.

The property subject to forfeiture includes, but is not limited to, the following:

1. U.S. currency in the amount of $2,259.49.
2. Stainless steel dash everyday stand mixer.

    3.     12-piece veggie bullet.

    4.     3-pkg 36" large cold confetti filled clear balloons.

    5.     White iPhone 6 Plus (model # A1522) containing a serial number of 354387068223315 with a blue case.

    6.     White iPhone (model # A1778) containing a serial number of BCG-E3091A.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendants:

    i.     cannot be located upon the exercise of due diligence;

    ii.    has been transferred, sold to, or deposited with a third party;

    iii.   has been placed beyond the jurisdiction of this Court;

    iv.   has been substantially diminished in value; or

    v.    has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

[redacted]

DATE 01/07/2020

_____
LAWRENCE KEEFE
United States Attorney

_____
JUSTIN M. KEEN
Assistant United States Attorney